UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNIKA PEACOCK, *et al.*,<br>Plaintiffs,<br>v.<br>WILLIAM HULETT,<br>Defendant. | Case No. 2:26-cv-1775-DC-JDP (PS)<br><br>ORDER |

Plaintiffs Annika Peacock and Michael Peacock bring this action against defendant William Hulett.[1] Plaintiffs do not plausibly plead diversity jurisdiction, and they also have not articulated a cognizable claim. I will dismiss the complaint and give plaintiffs an opportunity to remedy the deficiencies identified below. I will also grant plaintiffs' applications to proceed *in forma pauperis*, ECF Nos. 7 & 8, which make the required showing. Finally, I will deny plaintiffs' request for permission to file electronically, ECF No. 6.

**Screening and Pleading Requirements**

A federal court must screen the complaint of any claimant seeking permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(e). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon

[1] To avoid confusion, I refer to Annika Peacock as "Annika" and Michael Peacock as "Michael."

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.*

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not require detailed allegations, but legal conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim. *Id.* at 679. The complaint need not identify "a precise legal theory." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016). Instead, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).

The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

**Background**

Plaintiffs allege that Annika and James Peacock ("James"), Michael's father, acquired property in Chester, California. ECF No. ¶ 9. While James paid approximately $290,000 for the property, Annika "invested approximately $100,000 to $150,000 of her own funds in capital improvements to render the property habitable." *Id.* ¶¶ 9-10. In 2025, Annika filed suit against James in Santa Barbara County Superior Court, "seeking recognition of her ownership interest and capital investment" in the property. *Id.* ¶ 12. By mid-2025, James allegedly "was discussing a structed buyout with a fixed distribution to himself of $375,000." *Id.* ¶ 13.

On May 30, 2025, defendant Hulett, an attorney in Ohio, sent a letter to Annika's attorney. *Id.* ¶ 14. Hulett allegedly stated that he represented James, plaintiffs had an existing contract with James under which they had failed to make monthly payments, and plaintiffs had refused any communication with James. *Id.* ¶¶ 15-16. Hulett allegedly declined the settlement offer of $375,000 and demanded $390,000 instead. *Id.* ¶ 18. Plaintiffs allege that settlement negotiations ceased sometime after Hulett sent this letter. *Id.* ¶ 26.

Plaintiffs allege that Hulett "was not admitted to practice law in California, had no authority to represent James Peacock in a California legal matter, and had not been duly authorized to take any legal action on James Peacock's behalf." *Id.* ¶ 15. Further, plaintiffs allege that Hulett is married to James' stepdaughter, and that his letter therefore "served his own estate interests, not James Peacock's legal interests." *Id.* ¶ 24.

On January 7, 2026, James filed a cross-complaint in the state court action, which "tracks the factual allegations of Defendant's letter almost verbatim." *Id.* ¶ 25. Plaintiffs allege that Annika "is now compelled to defend that cross-complaint as a direct consequence of Defendant's conduct." *Id.*

**Analysis**

As an initial matter, plaintiffs do not plausibly allege that the amount in controversy exceeds the jurisdictional threshold of $75,000 for establishing diversity jurisdiction.[2] *See* 28 U.S.C. § 1332(a). Hulett's letter rejected a settlement offer of $375,000 and instead demanded $390,000—an increase in $15,000. *See* ECF No. 1 ¶ 18. Annika presumably did not agree to this counter demand and has instead continued to litigate the state court action. Plaintiffs allege that their harm from Hulett's letter comes primarily in the form of defending James' cross-complaint in the state court action. *See* ECF No. 1 ¶ 25. But plaintiffs do not plausibly allege that James filed the cross-complaint because of Hulett's letter. Indeed, plaintiffs' allegation that the cross-complaint "tracks the factual allegations of Defendant's letter almost verbatim" supports the

[2] For purposes of screening, plaintiffs have plausibly pled that there is complete diversity of citizenship. Plaintiffs allege that, though they are temporarily living abroad, they are each considered citizens of California because they "intend to return to California as their permanent domicile." ECF No. 1 ¶ 2. Plaintiffs further allege that Hulett is a citizen of Ohio. *Id.* ¶ 3.

opposite inference: Hulett communicated James' positions regarding the state court action, and James has since chosen to litigate those positions. *See id.* ¶ 25.

Moreover, even if Annika's litigation expenses were properly considered part of the amount in controversy, she does not plausibly allege that such expenses will exceed $75,000. While Annika was previously represented by counsel, she allegedly only did so "for settlement negotiation." *See id.* ¶ 13. The complaint does not state whether Annika is proceeding through counsel or pro se in the state court action. Further, Annika's claimed loss of diminution of her property interest "as the property sits vacant and deteriorating during forced litigation" presumes that she will succeed in the state court action. *See id.* ¶ 26.

I find that plaintiffs do not plausibly allege that the amount in controversy exceeds $75,000. To guide amendment, I nonetheless analyze plaintiffs' claims to identify deficiencies that plaintiffs should address if they file an amended complaint.

Plaintiffs bring three state claims. First, they allege that Hulett's letter constituted libel per se. *Id.* ¶¶ 27-34. "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face." Cal. Civ. Code § 45a. California courts have held that "[i]t is error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a defamatory meaning." *Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1131 (1985).

Assuming *arguendo* that Hulett's letter constituted libel per se, plaintiffs do not adequately explain why it is not shielded by privilege. In California, the litigation privilege protects a "publication or broadcast" that has "some connection or logical relation" to a judicial proceeding. *Am. Prods. Co. v. L. Offs. of Geller, Stewart & Foley, LLP*, 134 Cal. App. 4th 1332, 1340 (2005) (citing Cal. Civ. Code § 47). "The privilege has been broadly applied to demand letters and other prelitigation communications by attorneys." *Id.* at 1341.

Plaintiffs allege that this privilege does not apply because Hulett "was not a licensed California attorney, was not authorized to appear in any California proceeding, and was engaged in unauthorized practice of law." ECF No. 1 ¶ 31. As an initial matter, plaintiffs do not plausibly

state that Hulett engaged in the unauthorized practice of law. The only explanation they offer for this legal conclusion is that the State Bar of California "opened Case No. 25-NA-25203 and issued a cease-and-desist reprimand to" Hulett. *See id.* ¶ 19. Plaintiffs offer no explanation of the findings made by the State Bar of California, and the court is unable to locate any records associated with the case number provided by plaintiffs.

The California Supreme Court has held that "the practice of law 'in California' entails sufficient contact with the California client to render the nature of the legal service a clear legal representation." *Birbrower, Montalbano, Condon & Frank v. Superior Ct.*, 17 Cal. 4th 119, 128 (1998). California courts have also held that "the client's residence or its principal place of business is determinative of the question of whether the practice is proscribed by [California Business and Professions Code] section 6125. Clearly the state of California has no interest in disciplining an out-of-state attorney practicing law on behalf of a client residing in the lawyer's home state." *Est. of Condon*, 65 Cal. App. 4th 1138, 1146 (1998).

Plaintiffs do not provide sufficient factual allegations to plausibly state that Hulett had "sufficient contact" with James to "render the nature of the legal service a clear legal representation." *See Birbrower*, 17 Cal. 4th at 128. Further, plaintiffs do not plead James' state of residence; if James resides outside of California, then Hulett would have greater latitude in providing legal services to him. *See Est. of Condon*, 65 Cal. App. 4th at 1146.

Moreover, even if Hulett engaged in the unauthorized practice of law, plaintiffs provide no authority for their allegation that the demand letter therefore does not fall within the litigation privilege. *See* ECF No. 1 ¶ 31. For all of these reasons, plaintiffs fail to state a libel per se claim.

Second, plaintiffs plead that Hulett engaged in tortious interference with Annika's prospective economic advantage. *Id.* ¶¶ 35-40. To state such a claim, a plaintiff must show: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987). The first element requires "an

allegation of a 'reasonable probability' that a contract or profit would have been obtained but for the defendant's acts." *Id.* at 73. The third element "requires pleading that the defendant committed an independently wrongful act. An act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020) (cleaned up).

Plaintiffs allege that the settlement negotiations "had a reasonable probability of resulting in a structed buyout at favorable terms, as evidenced by James Peacock's counteroffer of [a] $375,000 fixed distribution." ECF No. 1 ¶ 36. However, they provide no factual allegations to support this conclusion, which is undermined by plaintiffs' allegation that settlement negotiations fell apart after James counter demanded $390,000—$15,000 more than what plaintiffs allege they would have agreed to. *See id.* As such, Annika fails to present "an allegation of a 'reasonable probability' that a contract or profit would have been obtained but for [Hulett's] acts." *See Youst*, 43 Cal. 3d at 73.

What is more, plaintiffs do not plausibly allege that Hulett committed an unlawful act. Their two relevant allegations—that Hulett engaged in the unauthorized practice of law and that Hulett made defamatory statements—are not adequately alleged, as explained above. *See* ECF No. 1 ¶ 38. As such, plaintiffs do not show that Hulett's letter was independently wrongful. *See Ixchel Pharma, LLC*, 9 Cal. 5th at 1142. For all of these reasons, Annika fails to plead a claim for tortious interference with prospective economic advantage.

Lastly, plaintiffs allege that Hulett engaged in a civil conspiracy. ECF No. 1 ¶¶ 41-44. However, as the California Supreme Court held, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). Consequently, "a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *Id.* at 511. Accordingly, plaintiffs' conspiracy claim is not cognizable because they have adequately pled a tort claim.

Accordingly, plaintiffs' complaint is dismissed. I will allow plaintiffs an opportunity to amend their complaint before recommending that this action be dismissed. Any amended complaint will entirely supersede the initial one and must be complete in itself. It should be titled "First Amended Complaint" and be filed within twenty-one days of this order's entry.

Lastly, I will deny plaintiffs' request for permission to file electronically, ECF No. 6. Generally, "any person appearing pro se may not utilize electronic filing except with the permission of the assigned Judge or Magistrate Judge." E.D. Cal. L.R. 133(b)(2). "Requests to use paper or electronic filing as exceptions from these Rules shall be submitted as stipulations as provided in L.R. 143 or, if a stipulation cannot be had, as written motions setting out an explanation of reasons for the exception." E.D. Cal. L.R. 133(b)(3).

Plaintiffs allege that they "reside outside the United States, in Chiang Mai, Thailand" and "receive paper mail in this action only through a forwarding address." ECF No. 6 at 2. Nonetheless, a review of the docket shows that plaintiffs have been able to receive documents and make timely filings. For instance, on July 20, 2026, I ordered that Michael must file a separate application to proceed *in forma pauperis*. ECF No. 3. One week thereafter, plaintiffs made several filings, including Michael's application. *See* ECF Nos. 6, 7, 8, & 9. Plaintiffs do not demonstrate good cause for a departure from the normal filing procedure for unrepresented litigants. Plaintiff's request, ECF No. 6, is therefore denied.[3]

Accordingly, it is ORDERED that:

1. Plaintiffs' complaint, ECF No. 1, is DISMISSED with leave to amend.

2. Within twenty-one days from service of this order, plaintiffs shall file either (1) an amended complaint or (2) notice of voluntary dismissal of this action without prejudice.

3. Failure to timely file either an amended complaint or notice of voluntary dismissal may result in the imposition of sanctions, including a recommendation that this action be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

---

[3] I deny plaintiffs' request without prejudice to it being re-filed if the court later finds that it has jurisdiction and that plaintiffs have stated at least one cognizable claim. Plaintiffs are discouraged from filing a renewed request while this action remains in the screening stage.

4. Plaintiffs' request for permission to file electronically, ECF No. 6, is DENIED without prejudice.

5. Michael Peacock's application to proceed *in forma pauperis*, ECF No. 7, is GRANTED.

6. Annika Peacock's amended application to proceed *in forma pauperis*, ECF No. 8, is GRANTED.

7. Annika Peacock's initial application to proceed *in forma pauperis*, ECF No. 2, is DENIED as moot.

IT IS SO ORDERED.

Dated: September 1, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE