UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNIKA PEACOCK, *et al.*,<br>Plaintiffs,<br>v.<br>WILLIAM HULETT, *et al.*<br>Defendants. | Case No. 2:26-cv-1775-DC-JDP (PS)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiffs Annika Peacock and Michael Peacock, proceeding pro se, bring this action against defendants William Hulett and Laura Hulett, stemming from a family dispute over property.[1] I previously dismissed plaintiffs' complaint because they failed to plead diversity jurisdiction. The first amended complaint suffers from the same deficiency. Accordingly, I recommend that it be dismissed without leave to amend.

**Screening and Pleading Requirements**

A federal court must screen the complaint of any claimant seeking permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(e). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such

[1] To avoid confusion, I refer to Annika Peacock as "Annika," Michael Peacock as "Michael," William Hulett as "William," and Laura Hulett as "Laura."

relief. *Id.*

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not require detailed allegations, but legal conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim. *Id.* at 679. The complaint need not identify "a precise legal theory." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016). Instead, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).

The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

**Background**

The following allegations are taken from the first amended complaint ("FAC") and, for purposes of this order, are assumed to be true. In 2020, Annika and James Peacock ("James"), Michael's father and Annika's father-in-law, acquired property in Chester, California ("the property"). ECF No. 11 ¶ 14. While James paid approximately $290,000 for the property, Annika "invested approximately $100,000 to $150,000 of her own funds . . . in capital improvements necessary to make the Property habitable." *Id.* ¶¶ 14, 16.

Plaintiffs rented the property to third parties, and they never "discussed the Property's short-term rental use with James." *Id.* ¶ 27. Plaintiffs allege that Laura, James' stepdaughter and Michael's stepsister, saw information regarding the rental of the property on Annika's Facebook

and other websites, and that she informed James that plaintiffs were renting the property to third parties. *Id.* ¶ 28. As a result, Annika adjusted her Facebook privacy settings such that "[s]he withdrew from the open, audience-facing presence she had built and maintained for years, curtailed or abandoned the channels through which she reached her audience, and altered the way she distributes her work."[2] *Id.* ¶¶ 31-34.

In May 2025, Annika's counsel sent James a letter wherein "Annika offered to purchase James's interest [in the property] for $290,000." *Id.* ¶ 36. Later that month, Annika received a letter from William, Laura's husband, who is an attorney in Ohio and stated that he was writing on behalf of James. *Id.* ¶ 37. William represented that James had "an existing contract" with Annika and Michael whereby they "agreed to make monthly rental payments in the amount of $750.00/ month, but Annika and Michael have failed to make even a single payment." *Id.* ¶ 38. William stated that plaintiffs "owe over $40,000 in unpaid rent, fees and interest." *Id.* William further represented that James declined Annika's offer but that he would "convey the Property to Annika for $390,000." *Id.* ¶ 42.

Plaintiffs allege that "there was no contract, no rental agreement, no payment obligation, and no debt." *Id.* ¶ 39. Annika's counsel answered the letter "raising her offer to $300,000, with no conditions. James did not accept." *Id.* ¶ 44. James later called Annika's attorney and stated that William "was helping him work through this but was not representing him." *Id.* ¶ 44. Plaintiffs allege that William is not authorized to practice law in California. *Id.* ¶ 49. Annika filed a complaint with the State Bar of California. *Id.* ¶ 49. Plaintiffs have attached to the FAC several communications they received from the State Bar. The latest communication represents that "the State Bar has issued a warning letter to Mr. Hulett regarding the conduct that formed the basis for [the] complaint" and "provided Mr. Hulett with information as to what acts are considered the practice of law[.]" *Id.* at 40.

---

[2] Plaintiffs do not detail Annika's work. In her motion to proceed *in forma pauperis*, Annika represented to the court that she receives no money from employment or self-employment. *See* ECF No. 8 at 1.

In August 2025, Annika filed suit against James in Santa Barbara County Superior Court, "seeking recognition of her ownership interest and capital investment" in the property. ECF No. 1 ¶ 12. "James's cross-complaint in the State Action, filed January 7, 2026, tracks the letter: it alleges an oral agreement to pay rent, unpaid rent, and quantum meruit, on the theory and figures the letter introduced." ECF No. 11 ¶ 52.

As a result of defendants' actions, Annika seeks "[t]he reasonable value of the mental-health and emergency medical care she has required and continues to require," "[t]he cost of the privacy and security measures" she undertook, and "[t]he loss of the online presence, audience, and channels of distribution." *Id.* ¶ 56. She pleads "general damages of not less than $500,000 for the invasion of privacy and the infliction of emotional distress." *Id.* ¶ 57. Michael seeks "general damages of not less than $150,000 for the infliction of emotional distress." *Id.* ¶ 58.

**Analysis**

Plaintiffs again fail to show that the amount in controversy exceeds the jurisdictional threshold of $75,000 for establishing diversity jurisdiction.[3] *See* 28 U.S.C. § 1332(a). The amount in controversy is the "amount at stake in the underlying litigation" and "includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (cleaned up); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (holding that "the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover") (emphasis in original).

Plaintiffs first allege that their harm from William's letter comes in the form of defending James' cross-complaint in the state court action. *See* ECF No. 11 ¶ 52. But plaintiffs do not plausibly allege that James filed the cross-complaint because of William's letter. Indeed, plaintiffs' allegation that James' cross-complaint "tracks the letter" supports the opposite inference: William communicated James' positions regarding the existence of a rental contract for the property, and James has since chosen to litigate those positions. *See id.* The only reasonable

---

[3] For purposes of screening, plaintiffs have plausibly pleaded that there is complete diversity of citizenship. *See* ECF No. 11 ¶¶ 2-5.

inference from plaintiffs' allegations is that James filed the cross-complaint because it is his position that plaintiffs owe him money for unpaid rent. As such, plaintiffs do not show that any cost of defending the cross-complaint stems from defendants' actions.[4]

Plaintiffs next seek damages connected to emotional distress. As noted, Annika seeks reimbursement for medical care. ECF No. 11 ¶ 56. However, the only example that she provides is from August 2021—years before William sent the letter—and she states that it was connected to a different event in which James was defrauded by an unknown party. *See id.* ¶ 54. Without discounting Annika's allegations of anxiety and stress, she fails to plausibly allege that she has suffered severe emotional distress as a result of defendants' actions. It bears repeating that Annika and James are litigating in state court the issue of whether there was a contract between them. That action, as plaintiffs allege, is wholly disconnected from defendants' conduct. *See id.* ¶¶ 64-65.

Annika also claims that she "has suffered injury to her reputation," specifically in her field of cybersecurity. *Id.* ¶ 55. However, plaintiff does not allege that she was working in this field at the time William sent the letter. In her motion to proceed *in forma pauperis*, Annika represented to the court that, between July 20, 2025 and July 20, 2026, she earned no money from employment or self-employment. *See* ECF No. 8 at 1. William dated his letter May 30, 2025—less than two months before the time period in which Annika has represented that she earned no monthly income. Further, plaintiffs do not allege that the contents of William's letter ever became public such that other people were aware of James' allegation that Annika has violated their agreement. For these reasons, Annika fails to show that she has suffered any financial damages connected to her reputation in her field.

Annika also seeks "[t]he cost of privacy and security measures." ECF No. 11 ¶ 56. After Annika believed that Laura was monitoring her Facebook and online presence, Annika "moved her primary electronic mail to an encrypted provider on a paid annual subscription and created a

---

[4] Even if Annika's litigation expenses were properly considered part of the amount in controversy, she does not estimate those expenses. The state court docket reflects that Annika proceeds pro se. *See Annika Peacock v. James Peacock*, Case No. 25CV05454 (Cal. Super. Ct. Santa Barbara Cnty.).

separate address for this dispute, and adopted address-privacy measures, including a private mail-forwarding address, at a cost she continues to bear." *Id.* ¶ 32. Annika does not explain how Laura's monitoring of her online presence is connected to Annika's email accounts. To be sure, Annika does not allege that Laura or anyone else accessed her email account without authorization. As such, these costs appear wholly disconnected from defendants' actions.

As for Michael, plaintiffs allege that he "has been falsely named" as a debtor even though he does not own the property. *Id.* ¶ 59. Again, plaintiffs do not allege that the contents of William's letter ever became public, and they do not add any further detail regarding how Michael has been injured as a result of defendants' actions.

Lastly, plaintiffs seek damages under California Civil Code § 3294 for their claims of libel, invasion of privacy, and intentional infliction of emotional distress. *Id.* at 33. This section authorizes punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice[.]" Cal. Civ. Code § 3294(a). "In determining whether a punitive damage award is excessive under California law, a court must consider (1) the reprehensibility of the defendant's conduct; (2) the amount of compensatory damages or actual harm suffered by the plaintiff; and (3) the defendant's financial condition." *Corenbaum v. Lampkin*, 215 Cal. App. 4th 1308, 1337 (2013). The Supreme Court of California has generally held that the ratio of punitive damages to compensatory damages should be 3 or 4 to 1 and cannot exceed 10 to 1. *Simon v. San Paolo U.S. Holding Co.*, 35 Cal. 4th 1159, 1182, 1189 (2005).

As an initial matter, even if plaintiffs were entitled to punitive damages, they do not plausibly show that the amount in controversy would exceed the jurisdictional threshold. As established above, plaintiffs have suffered little to no compensatory damages stemming from defendants' actions. Even allowing for punitive damages at the constitutionally maximum 10 to 1 ratio, plaintiffs fail to demonstrate that the amount in controversy would surpass $75,000.

Moreover, plaintiffs do not plausibly show that they would be entitled to punitive damages. As noted, such damages are available only where the defendant is "guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Plaintiffs' libel claim alleges that

William wrote defamatory statements about plaintiffs, namely, that that they had a rental agreement with James. ECF No. 11 ¶¶ 68-76. However, James has continued to litigate the issue of whether there was a contract between him and plaintiffs. The only reasonable inference from these allegations is that James communicated his position to William, who in turn conveyed it to Annika. Such conduct falls far short of the statutory requirement of proving "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *See* Cal. Civ. Code § 3294(c)(3).

Plaintiffs' invasion of privacy claim pleads that defendants intruded "into Annika's private matters, without consent, by monitoring her accounts, profile, and activity over a period of years." ECF No. 11 ¶ 79. As noted, this claim stems from Laura viewing Annika's publicly available social media and unspecified websites. *See id.* ¶¶ 28-30. This activity cannot be said to be "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others" or "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *See* Cal. Civ. Code §§ 3294(c)(1)-(2).

Plaintiffs' intentional infliction of emotional distress claim is based on both Laura's online monitoring of Annika and William's letter. *Id.* ¶ 85. For the reasons stated above, plaintiffs fail to show that either conduct meets the statutory threshold for punitive damages.

Accordingly, plaintiffs fail to show that the court has diversity jurisdiction over this action. Plaintiffs have already been afforded an opportunity to amend with notice of this pleading deficiency. Because they have failed to correct such deficiency, dismissal with prejudice is appropriate. *See Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) ("The district court's decision to dismiss the second amended complaint with prejudice was appropriate in light of [the] plaintiffs' repeated failure to cure the deficiencies in their pleadings.") (cleaned up).

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. Plaintiffs' first amended complaint, ECF No. 11, be DISMISSED without leave to amend.

2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: November 13, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE